**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| DANIEL REAM, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>GLOBAL POWER EQUIPMENT GROUP, INC., LUIS MANUEL RAMIREZ, RAYMOND K. GUBA, and TERENCE J. CRYAN,<br><br>    Defendants. | Case No. 3:15-cv-01679-M |
| MARGARET BUDDE, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>GLOBAL POWER EQUIPMENT, INC., RAYMOND K. GUBA and LUIS MANUEL RAMIREZ,<br><br>    Defendants. | Case No. 3:15-cv-02120-B |

**MEMORANDUM OF LAW IN SUPPORT OF MARGARET BUDDE'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF,
APPROVAL OF HER SELECTION OF LEAD AND
<u>LIAISON COUNSEL AND CONSOLIDATION OF RELATED CASES</u>**

## **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................................ 3

III. ARGUMENT ..................................................................................................................... 5

   A.   The Related Actions Should Be Consolidated................................................................ 5

   B.   Movant Should Be Appointed Lead Plaintiff ................................................................. 7

      1.   Movant Has the Largest Financial Interest in the Relief Sought by the Class.................. 7

      2.   Plaintiff Easily Satisfies the Typicality and Adequacy Requirements of Rule 23 ........... 8

   C.   The Court Should Approve Movant's Selection Of Lead and Liaison Counsel................ 10

V.   CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Ascendant Solutions, Inc.*,
   No. 01-cv-166, 2002 U.S. Dist. LEXIS 6850 (N.D. Tex. Apr. 17, 2002) .................................. 7

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) .................................................................................................. 5

*Brody v. Zix Corp.*,
   2005 U.S. Dist. LEXIS 13871 (N.D. Tex. 2005) ....................................................................... 9

*Garber v. Randell*,
   477 F.2d 711 (2d Cir. 1973) ........................................................................................................ 6

*Gluck v. Cellstar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) ............................................................................................ 8

*In re Air Crash Disaster at Florida Everglades*,
   549 F.2d 1006 (5th Cir. 1977) .................................................................................................... 5

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3rd Cir. 2001) ................................................................................................. 8, 10

*In re Lernout & Hauspie*,
   138 F. Supp. 2d 39 (D. Mass. 2001) ........................................................................................... 8

*In Re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ............................................................................................. 6

*In Re Universal Access, Inc.*,
   209 F.R.D. 379 (E.D. Tex. 2002) ................................................................................................ 5

*Johnson v. Pozen, Inc.*,
   2008 U.S. Dist. LEXIS 12004 (M.D.N.C. 2008) ...................................................................... 8

*Lintz v. Agria Corp.*,
   No. 08-cv-3536, 2008 U.S. Dist. LEXIS 99846 (S.D.N.Y. Dec. 3, 2008) ........................... 6, 7

*Olsen v. New York Cmty. Bancorp, Inc.*,
   233 F.R.D. 101 (E.D.N.Y. 2005) ................................................................................................ 9

*Pittman v. Memorial Herman Healthcare & Mem. Herman Hosp.*,
   124 F. Supp. 2d 446 (S.D. Tex. 2000) .................................................................................... 5, 6

*Russo v. Alamosa Holdings, Inc.*,
  No. 03-cv-312, 2004 WL 579378 (N.D. Tex. Feb. 27, 2004) ...................................................... 6

*State Univ. Ret. Sys. of Ill. v. Sonus Networks, Inc.*,
  No. 06-CV-10040, 2006 WL 3827441 (D. Mass. Dec. 27, 2006) ................................... 8, 9, 10

*TDH Ptnrs. LLP v. Ryland Group, Inc.*,
  2006 U.S. Dist. LEXIS 36084 (N.D. Tex. 2006) ....................................................................... 8

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................... 1, 2, 7, 10

15 U.S.C. § 77z-1(a)(3) ................................................................................................................ 5, 8

**Other Authorities**

Manual for Complex Litigation (Third), § 20.123 (1995) ................................................................ 5

**Rules**

Fed. R. Civ. P. 42(a) .................................................................................................................... 1, 5

Fed. R. Civ. P. 23 ..................................................................................................................... passim

Plaintiff Margaret Budde (the "Plaintiff" or "Movant"), in connection with the securities class actions filed against Global Power Equipment Group, Inc. ("Global Power" or the "Company") and certain of its current and former officers and directors, respectfully submits this memorandum in support of her motion for an Order: (1) appointing Movant as Lead Plaintiff pursuant to Section 27(a)(3)(B) of the Exchange Act of 1933 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (2) approving Movant's selection of Block & Leviton LLP ("Block & Leviton) as Lead Counsel and Kendall Law Group, LLP ("Kendall Law Group") as Liaison Counsel; and (3) consolidating the above-captioned related actions (the "Actions").

## I.    PRELIMINARY STATEMENT

Presently pending in this District are two securities class actions brought on behalf of a putative class (the "Class") of investors who suffered damages as a result of their transactions in Global Power securities during the period from March 17, 2014 through and including May 6, 2015 (the "Class Period").

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). The Court should exercise its discretionary power and consolidate the Actions, which each allege violations of §§ 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder. The Actions allege substantially the same misconduct by the Company and certain of its current and former officers and/or directors. Because the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated in accordance with Federal Rule of Civil Procedure 42(a).

As alleged in the complaints on file, during the Class Period, Defendants caused the prices of Global Power's publicly traded securities to be overvalued and artificially inflated by issuing material misrepresentations and omissions that misled shareholders regarding the Company's cost of sales and gross profits. Specifically, Global Power filed financial statements with the SEC, and publicly disseminated those financial statements to members of the class, which fraudulently included an understatement of the Company's cost of sales in the quarterly and annual periods ended December 31, 2014. Understated cost of sales, in turn, leads to artificially inflated gross profits, a key metric considered by investors. A notice of the first filed of the Actions, as required by the PSLRA, was published on May 13, 2015.[1]

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides that the "most adequate plaintiff" is the lead plaintiff movant that has the "largest financial interest" in the relief sought by the Class and otherwise satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. § 78u-4(a)(3)(B)(iii)(I).

Movant respectfully submits that she is the "most adequate plaintiff", as defined by the PSLRA, because she believes that she has the largest financial interest in the relief sought in this action under her proposed Class Period and otherwise satisfies the requirements of Rule 23. As shown by the PSLRA certifications submitted herewith, Movant suffered a loss of more than $5,200 from her investment in Global Power securities during the Class Period.[2] Through her investments in Global Power stock during the Class Period, Movant has standing to represent all claims on behalf of all members of the Class.

---

[1] *See* PSLRA required Notice, dated May 13, 2015, attached as Ex. A to the Declaration of Joe Kendall ("Kendall Decl.").

[2] *See* Certifications and Loss Chart of Margaret Budde, attached as Exhibits B and C, to the Kendall Decl.

Finally, Movant submits that her chosen counsel Block & Leviton and Kendall Law Group are qualified to represent the interests of the Class.

## II. STATEMENT OF FACTS

Global Power is a Delaware corporation, with its principal place of business in Irving, Texas. The Company is a provider of engineered products and services to the power, energy and process industries. It sells equipment used in all manner of power plant construction and maintenance, of both the off the shelf and custom designed varieties. The Company also provides various services, such as general and specialty construction, maintenance, modification and plant management support services covering the full life cycle of power plants.

On May 6, 2015, Global Power issued a press release which stated that it would delay the filing of its Form 10-Q for the first quarter of 2015 and restate its financial results for the annual period ended December 31, 2014.

In the May 6, 2015, press release, the Company stated that the Audit committee of its board of directors concluded that the financial statements for the annual period ended December 31, 2014, should not be relied upon because of accounting errors affecting the fourth quarter of 2014 discovered during the first quarter 2015 financial review process. Those errors resulted in an understatement of the Company's cost of sales in the quarterly and annual periods ended December 31, 2014. Because cost of sales is a material metric for Global Power's investors, it is prominently reported and discussed in the Company's financial filings and publicly issued statements, either on its own or through the gross profits metric, which it directly impacts.

The press release also stated "On March 9, 2015, Global Power provided projections of the Company's 2015 consolidated revenue, gross margin and selling, general and administrative expenses as a percentage of sales. Primarily as a result of the errors described above, but also

based on a preliminary assessment of our financial performance in the first quarter of 2015, investors should no longer rely upon those previously released projections."

The stock market's reaction to the corrective disclosure that Global Power had misstated its cost of sales was direct, with the Company's share price immediately plunging approximately 33% within the first day of the announcement. The closing price on May 6, 2015, prior to the announcement regarding the errors in the Company's cost of sales, was $12.24 per share. On May 7, as the market reacted to the news, the stock closed at $8.19 per share. In the weeks following the announcement, the share price continued to fall, trading as low as $7.11 per share, a drop of over 40% and representing tens of millions of dollars in lost shareholder value.

Thus, during the Class Period, the SEC filings and press releases referenced above were materially false and/or misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them, including that: (i) the Company's representations regarding its cost of sales, and therefore its gross profits, were false and fraudulently misrepresented the Company's financial performance; (ii) the Company's internal controls were ineffective; and (iii) as a result of the above, the Company's financial statements filed with the SEC and related financial reports were materially false and misleading at all relevant times.

As such, Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, causing the damages complained of herein.

The PSLRA permits any member of the purported class to move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the

same claims has been filed. *See* 15 U.S.C. § 77z-1(a)(3)(A)(i)(II). Movant has satisfied this requirement through her filing of this motion.

## III. ARGUMENT

### A. The Related Actions Should Be Consolidated

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact. Therefore, consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Moreover, the PSLRA also calls for consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed[.]" *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008); *see also In re Universal Access, Inc.,* 209 F.R.D. 379, 382 (E.D. Tex. 2002) (consolidating related securities class action cases because they involved nearly identical claims and defendants). Though the power of the Court to consolidate cases is discretionary, the Fifth Circuit has urged district courts to use Rule 42(a) to expedite trial and eliminate unnecessary repetition and confusion. *See, e.g., In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1013 (5th Cir. 1977) ("[D]istrict judges have been urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion.") (internal quotation omitted). With the grant of authority in Rule 42(a), the Court enjoys broad authority to control its docket. *Pittman v. Memorial Herman Healthcare & Mem. Herman Hosp.*, 124 F. Supp. 2d 446, 449 (S.D. Tex. 2000) (noting that "[u]nder the Federal Rules, district courts are

5

vested with broad discretionary authority to consolidate cases in the interests of efficiency and judicial economy"). Courts have identified securities litigation as particularly well suited for consolidation. *See In re Olsten Corp. Sec. Litig.*, 3 F.Supp. 2d 286, 292 (E.D.N.Y. 1998) (citing cases); *see also Garber v. Randell*, 477 F.2d 711, 713 (2d Cir. 1973) (noting the benefits of "consolidation of stockholders' suits").

Courts typically consider the following factors when deciding whether to consolidate related cases:

> Whether (1) the cases proposed for consolidation are pending either before the same court for all purposes or before two different courts within the same judicial district; (2) the cases involve a common party; (3) the cases involve common issues of law and/or fact; (4) there is no risk of prejudice or possible confusion if the cases are consolidated, or if there is any risk, it is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately; (5) consolidation will not result in an unfair advantage; (6) consolidation will conserve judicial resources; (7) consolidation will reduce the time for resolving the cases when compared to separate trials; and (8) consolidation will reduce the expense of trying the cases separately.

*Russo v. Alamosa Holdings, Inc.*, No. 03-cv-312, 2004 WL 579378, at *1 (N.D. Tex. Feb. 27, 2004). Each of these factors supports consolidation of the above captioned cases.

The Actions allege claims of fraud and/or severe recklessness on the part of Defendants in connection with their statements to investors, the preparation of financial statements, and in otherwise misleading the investing public regarding the success and financial condition of Global Power during the Class Period. Since the related cases: (i) are pending in the same district; (ii) involve common issues of law and fact; (iii) present no risk of prejudice through consolidation; (iv) create no unfair advantage from consolidation; (v) will conserve judicial resources through consolidation; (vi) reduce the time for resolving the cases; and (vii) reduce the expense of trying the cases separately, consolidation is appropriate. *See id.*; *see also Lintz v.*

6

*Agria Corp.*, No. 08-cv-3536, 2008 U.S. Dist. LEXIS 99846 (S.D.N.Y. Dec. 3, 2008) (consolidating actions that all alleged federal securities law violations.

### B.  Movant Should Be Appointed Lead Plaintiff

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant or group of movants that have timely filed a motion seeking Lead Plaintiff status has the "largest financial interest" in the relief sought by the Class and has made a *prima facie* showing of adequacy and typicality under Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  The movant or group with the largest financial interest is presumed to be the "most adequate plaintiff".  *Bell v. Ascendant Solutions, Inc.*, 2002 U.S. Dist. LEXIS 6850, at *12-*17 (N.D. Tex. Apr. 17, 2002).  That presumption can be rebutted "only upon ***proof***" that the movant "will not fairly and adequately protect the interests of the class."  *Id*. (emphasis added); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Accordingly, courts typically engage in a two-step inquiry to determine which plaintiff should be appointed Lead Plaintiff by:  (1) identifying which plaintiff has the largest financial interest in the litigation; and (2) determining whether that applicant meets the adequacy and typicality requirements of Rule 23(a).  *See, e.g., Ascendant Solutions* at *11.

#### 1.  Movant Has the Largest Financial Interest in the Relief Sought by the Class

Movant believes that she has the largest financial interest in the relief sought by the Class.  Here, Plaintiff purchased and/or acquired more than 900 shares of Global Power stock during the Class Period and suffered losses of more than $5,200.  *See* Kendall Decl., Exs. B and C.  Accordingly, Movant believes that she has the largest financial interest during her proposed Class Period of any Lead Plaintiff candidate and should therefore be appointed as Lead Plaintiff.

### 2. Plaintiff Easily Satisfies the Typicality and Adequacy Requirements of Rule 23

The PSLRA further provides that the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3rd Cir. 2001). The inquiry used for the appointment of Lead Plaintiff is not as searching as the one triggered by a motion for class certification. *TDH Ptnrs. LLP v. Ryland Group, Inc.*, 2006 U.S. Dist. LEXIS 36084, at *31 (N.D. Tex. 2006) ("The Rule 23 inquiry is considerably relaxed at this stage of the inquiry; stricter scrutiny is reserved until the class certification stage."). *See also Johnson v. Pozen, Inc.,* 2008 U.S. Dist. LEXIS 12004, at *4 (M.D.N.C. 2008). Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA. *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546-547 (N.D. Tex. 1997). At the Lead Plaintiff stage, the initial inquiry "should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy." *State Univ. Ret. Sys. of Ill. v. Sonus Networks, Inc.*, No. 06-CV-10040, 2006 WL 3827441, at *2 (D. Mass. Dec. 27, 2006); *In re Lernout & Hauspie*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001); *Cellstar Corp.* at 546 (recognizing that a plaintiff seeking appointment as Lead Plaintiff need only make a preliminary showing that she satisfies Rule 23's typicality and adequacy requirements).

Movant satisfies the typicality requirement of Rule 23. The typicality requirement mandates that a Lead Plaintiff suffer the same injuries as the proposed class as a result of the defendant's conduct and has claims based on the same legal issues. *Johnson v. Pozen, Inc.,* 2008 U.S. Dist. LEXIS 12004, at *5.

Here, Plaintiff's claims arise from the identical course of conduct by Defendants from which the claims of all other Class members arise. Like the other Class members, Movant

purchased and/or acquired Global Power securities during the Class Period at artificially inflated prices. Her losses, like the losses suffered by the other Class members, arise from Defendants' material misrepresentations regarding the Company's cost of sales in the quarterly and annual periods ended December 31, 2014 and 2015 sales and revenue projections.

Moreover, Movant's claims are typical as they "arise from the same event or course of conduct, and are based on the same legal theory." *Brody v. Zix Corp.*, 2005 U.S. Dist. LEXIS 13871, at *7 (N.D. Tex. 2005). Indeed, Plaintiff is particularly suited to serve as Lead Plaintiff because she purchased and/or acquired Global Power shares throughout the proposed Class Period. Accordingly, Plaintiff has standing to assert claims under the Exchange Act, and is thus in all respects "typical" of other Class members. *See, e.g., Olsen v. New York Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 108 (E.D.N.Y. 2005).

Movant also satisfies the adequacy requirement of Rule 23. "The 'adequacy' requirement is fulfilled if there are no conflicts of interests between the named plaintiff and other class members and the named party is prepared to prosecute the action vigorously." *Zix Corp.* at *8. Plaintiff readily meets the adequacy requirements. Her interests are the same as those of other Class members – *i.e.*, to hold Defendants liable for their violations of the federal securities laws and to seek recovery of the damages caused to investors who acquired Global Power securities based upon artificially inflated prices during the Class Period. Further, there are no facts that indicate any conflicts of interest between Movant and other Class members and, indeed, no such conflicts exist.

Finally, as explained below, Movant has selected Block & Leviton – a firm with extensive experience and qualifications in securities litigation – to serve as Lead Counsel for the Class. *See Sonus*, 2006 WL 3827441, at *2 (movant made *prima facie* showing of adequacy

where it had "both the ability and incentive to represent the class vigorously" and had "retained experienced counsel to do so"). Accordingly, Plaintiff satisfies the adequacy requirements of Rule 23.

### C.     The Court Should Approve Movant's Selection Of Lead and Liaison Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel, subject to court approval. *See* §78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 276 (holding that "the [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a Lead Plaintiff's choice of counsel is granted great deference under the law. *See Leech*, 2006 WL 3690736, at *4 ("Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class.") (*quoting In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305 (S.D. Ohio 2005)). Plaintiff has selected Block & Leviton to serve as Lead Counsel. As Judge Fish found in *Hohenstein*:

> the attorneys at Block & Leviton are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume. . . . [T]he court is convinced that [Plaintiffs'] chosen counsel [Block & Leviton] have the skill and knowledge that will enable them to prosecute this action effectively and expeditiously."

*Hohenstein v. Behringer Harvard REIT I, Inc.*, 2012 U.S. Dist. LEXIS 180013 at *12 (N.D. Tex. 2012); *see also,* Firm Resume of Block & Leviton, Kendall Decl., Ex. D.

Kendall Law Group, LLP is a law firm experienced in practicing in this District. They have handled numerous actions similar to the current matter and are experienced liaison counsel. *See, e.g.,* Firm Resume of Kendall Law Group, Kendall Decl., Ex. E.  Accordingly, the Court should approve Movant's selection of Kendall Law Group as Liaison Counsel for the Class.

## V.        CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court: (1) appoint Movant as Lead Plaintiff; (2) approve Movant's selection of Lead and Liaison Counsel; (3) consolidate the Actions; and (4) grant such other and further relief as the Court may deem just and proper.

Dated:  July 13, 2015                                  Respectfully submitted,

        /s/ Joe Kendall               
Joe Kendall
State Bar No. 11260700
Jamie J. Mckey
State Bar No. 24045262
**KENDALL LAW GROUP, LLP**
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015
jkendall@kendalllawgroup.com
jmckey@kendalllawgroup.com

*Proposed Liaison Counsel for the Class*

**BLOCK & LEVITON LLP**
Jeffrey C. Block
Jason M. Leviton
Steven P. Harte
155 Federal Street, Suite 400
Boston, Massachusetts 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
Jeff@blockesq.com
Jason@blockesq.com
Steven@blockesq.com

*Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I certify that a copy of this document was forwarded to counsel of record through the Court's ECF system on July 13, 2015.

        /s/ Joe Kendall                   
Joe Kendall